9 P.3d 814 (2000)
141 Wash.2d 577
In re the Personal Restraint Petition of: Mark Alan CRABTREE, Petitioner.
Nos. 67176-1, 67536-8.
Supreme Court of Washington, En Banc.
Argued March 20, 2000.
Decided September 14, 2000.
*815 Mark A. Crabtree, Monroe, Pro se.
Pattie Mhoon, Tacoma, for Petitioner.
Norm Maleng, King County Prosecutor, Deborah A. Dwyer, Deputy King County Prosecutor, James M. Whisman, Deputy King County Prosecutor, Seattle, for Respondent.
GUY, C.J.
This court granted discretionary review of orders dismissing two personal restraint petitions filed by the petitioner, Mark Crabtree. The cases have been consolidated and were initially deferred pending this court's decision *816 in State v. Aho.[1] The Court of Appeals properly dismissed the two personal restraint petitions (PRPs); however, between the time the PRPs were dismissed and the time Crabtree petitioned for discretionary review there was an intervening change in the law which may be relevant to this case. We hold that the intervening change in the law does not constitute good cause to grant the petition and therefore deny Crabtree's PRP.
Crabtree was charged with five sexual assaults against children. On April 18, 1989, he entered guilty pleas to charges of first degree child rape (count II), first degree child molestation (count IV), and first degree statutory rape (count V). As part of the plea agreement, the State dismissed the charges of first degree statutory rape (count I) and indecent liberties (count III). The court sentenced Crabtree to concurrent terms of 89 months (count II), 41 months (count IV), and 61 months (count V). A one-year term of community placement was imposed as part of his sentence for counts II and IV pursuant to former RCW 9.94A.120(8)(a) (1988).[2]
Crabtree began serving his term of community placement after earning 27 months of good time. He then violated the terms of his community placement and was returned to prison. Following his return to prison, Crabtree filed two PRPs.
On January 7, 1998, Crabtree filed his first PRP with the Court of Appeals claiming the community placement portion of his sentence violated the ex post facto clause because the community placement statute applies only to crimes committed on or after July 1, 1998. That PRP was dismissed as time-barred under RCW 10.73.090(1).[3] On July 7, 1998, while the first petition was still pending, Crabtree filed a pro se motion to withdraw his guilty plea. Crabtree challenged his convictions on the basis of an ex post facto violation, the court exceeded its jurisdiction by accepting the pleas, ineffective assistance of counsel, and newly discovered evidence. That motion was transferred to the Court of Appeals and handled as a PRP. This second PRP was procedurally barred. The Court of Appeals stated that Crabtree failed to show good cause for reraising his sentencing claim and for not making his other arguments in the first petition. The second petition was deemed a prohibited successive petition pursuant to RCW 10.73.140.[4] Crabtree made motions for discretionary review by this court of the two Court of Appeals orders dismissing the PRPs. We granted discretionary review.

ISSUES
(1) Is it proper for this court to review these consolidated motions?
(2) If so, has Crabtree shown "good cause" for this court to grant his petition?

*817 DISCUSSION
In the interest of judicial economy we will review these consolidated motions. Crabtree filed two PRPs. The first was time-barred because it was filed more than one year after his conviction became final, and the second did not show good cause why new issues were raised that had not been raised in the first PRP. His convictions are facially valid. Therefore, both petitions are barred by RCW 10.73.090 unless based solely on one or more of the grounds listed in RCW 10.73.100. Additionally, when the Court of Appeals "receives a personal restraint petition it may not consider under the terms of RCW 10.73.140, [the proper procedure] is either to dismiss it, or to transfer it to this Court if it determines RAP 16.4(d) might apply." In re Personal Restraint of Johnson, 131 Wash.2d 558, 566, 933 P.2d 1019 (1997). In this case, the Court of Appeals exercised the proper procedure in dismissing both petitions. We are faced with the issue of determining whether procedurally we may consider the PRPs under a RAP 16.4(d) "good cause" analysis after the petitions have been dismissed. This court may grant relief even if the Court of Appeals could not do so. See id.
In Johnson, the petitioner filed his first PRP protesting his offender score. Id. at 562, 933 P.2d 1019. The Court of Appeals denied the PRP based on State v. Chavez, 52 Wash.App. 796, 764 P.2d 659 (1988) (holding overlapping sentences not considered as one offense for purposes of calculating offender score). Chavez was subsequently overruled by In re Personal Restraint of Sietz, 124 Wash.2d 645, 648, 880 P.2d 34 (1994) (concluding for offenses committed before July 1, 1986, revoked probation or parole merges with another offense concurrently, establishing "`adult conviction served concurrently'" for purposes of former RCW 9.94A.360(6)(c) (1994) in calculating offender score). Johnson then filed his second PRP citing Sietz. This court held that RCW 10.73.140 did not bar this court's consideration of Johnson's PRP. In re Personal Restraint of Johnson, 131 Wash.2d at 566, 933 P.2d 1019. And the determination to be made was whether the petitioner had shown good cause under RAP 16.4(d) for reconsideration of the petition. Id.
Discretionary review of both PRPs in this case was sought and granted. RAP 16.14(c) states that "[i]f the petition is dismissed by the Chief Judge or decided by the Court of Appeals on the merits, the decision is subject to review by the Supreme Court only by a motion for discretionary review on the terms and in the manner provided in rule 13.5(a), (b), and (c)." In between the time the petitions were dismissed and the time review by this court was granted, the Aho case was decided. The Aho case is a subsequent change in the law that may qualify as "good cause" for granting the petition. petitions because they were time-barred due to the fact that none of the RCW 10.73.100 exceptions to the one-year limit on collateral attacks applied. However, if this court simply denies review, Crabtree may bring a successive petition arguing a subsequent change in the law. In the interest of judicial economy, we will determine whether there is good cause to grant Crabtree's petition.
Crabtree claims (1) a petitioner is unlawfully restrained when both state and federal constitutional due process rights are violated due to imposition of a sentence without statutory authority; (2) a PRP which raises obvious and inherently prejudicial constitutional errors is not time-barred; (3) a plea of guilty must be vacated when a defendant's due process rights were violated by charging, convicting, and sentencing the defendant under nonretroactive statutes that were not in effect during a portion of the charging period; (4) assistance of counsel was ineffective; and (5) newly discovered evidence in the form of recantation of a victim's testimony is grounds for relief by PRP and for withdrawal of guilty plea. Crabtree's claims should be denied because he pleaded guilty to the crimes occurring during the statutory time, and there is evidence that shows Crabtree committed the offenses during the statutory period. Moreover, counsel was effective in light of all the evidence before this court. And finally, the newly discovered evidence argument is without merit.
*818 This court may grant Crabtree's petition if "good cause" is shown. See In re Personal Restraint of Johnson, 131 Wash.2d 558, 933 P.2d 1019. An intervening change in the law has been recognized as good cause for granting a successive PRP. Id. In this case, the Aho decision may be seen as an intervening change in the law constituting good cause to grant Crabtree's petition. Claims based on a significant, intervening, retroactive change in the law are exempt from the statute. RCW 10.73.100(6). Such changes also constitute "good cause" for either reviewing a previously rejected claim or failing to raise a claim in a prior petition. See In re Personal Restraint of Holmes, 121 Wash.2d 327, 331, 849 P.2d 1221 (1993). Thus, if Aho is seen as "new" law, Crabtree can challenge his convictions and sentence without regard to procedural bars.
The petitioner in Aho claimed that his convictions for child molestation violated "ex post facto prohibitions because the statute under which he was charged and under which the jury was instructed did not take effect until approximately a year and a half after the beginning of the charging period." State v. Aho, 137 Wash.2d 736, 739, 975 P.2d 512 (1999). This court concluded that the Aho case involved a due process question, not an ex post facto issue.[5] In granting Aho's claim, this court reasoned that because the jury was not instructed to identify the time of specific occurrences constituting the offense, Aho may have been illegally convicted based upon acts occurring before the effective date of the child molestation statute. Id. at 743, 975 P.2d 512. A direct violation of the clear legislative mandate that the statute not be applied to acts committed before July 1988 occurred as a result of both the state and defense counsel permitting the matter to go forward despite the fact that the charging period, which was included in the jury instruction, included a substantial period of time before the effective date of the statute. Id. at 743, 975 P.2d 512. Aho was charged and convicted for an offense that may have occurred before the effective date of the statute. Id. at 744, 975 P.2d 512.
The Aho case differs from Crabtree's situation. Crabtree entered a guilty plea and in doing so admitted he committed the offenses between June 1, 1988 and August 31, 1988.[6] Moreover, there is evidence outside the guilty plea, showing that Crabtree did commit the offenses during the statutory period. There was neither an ex post facto violation nor a due process violation because Crabtree was not convicted for crimes occurring before the statutory period. The charging period did include one month, out of three, before the effective date of the statute; however, Crabtree was not prejudiced by this because he was not convicted of an offense that may have occurred during the month before the statute came into effect. Crabtree's due process rights would have been violated if the offenses for which the community placement was imposed had occurred before July 1, 1988. However, in Crabtree's guilty plea statement he admitted he committed rape of a child and child molestation between June 1, 1988 and August 31, 1988. This constituted an admission of criminal acts between July 1 and August 31. Crabtree was convicted and sentenced for crimes he admitted occurred after the effective date of the statute.
CrR 4.2(d) requires that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." This requirement protects defendants who are in the position of voluntarily pleading guilty with an understanding of the nature of the charge, but who *819 do not realize that the conduct does not actually fall within the charge. See State v. Zumwalt, 79 Wash.App. 124, 901 P.2d 319 (1995). Generally, the factual basis requirement requires the judge, before accepting the guilty plea, to determine that the defendant's admitted conduct constitutes the charged offenses. In this case we have the police report, information, determination of probable cause, guilty plea, plea agreement, and psychological evaluation stating that the offenses occurred within the statutory period.
Following Crabtree's arrest, he denied committing the offenses. On the eve of the trial, however, Crabtree changed his plea to guilty. Crabtree wanted to seek treatment for his problems, so the court provided funds to have Crabtree examined by a sexual deviancy specialist to determine if he would be an appropriate candidate for a special sex offender sentencing alternative sentence. The psychological evaluation says that "[i]n August, 1988, Mr. Crabtree states that he assaulted Jessica and David." Resp't's Br., App. E at 3. Crabtree went on to specifically outline what occurred when he was babysitting the two children in August 1988. Thus, in the evaluation Crabtree requested, he admitted to committing the offenses during the statutory time.
The police report contains an interview of the mother of the victims of counts II and IV. In the interview she stated:
Well, MARK had his uh two step children, uh, CASSIE and CHRISTOPHER, and his son, JUSTIN, come out on July 15th and we had em until the 31st and he took `em to um to back to his mother's to Montana for his uh estranged wife to pick `em up. And um, anyway, I had asked JESSICA when exactly the last event happened and she said, "It was the weekend after, after um MARK had taken the kids back to Montana." And that, I remember the night clearly because that wa... the kids went to their dad's for a week, and they came back that day and he had to babysit and the next day I was going out to my mother's and he was up about, I didn't come in until about 3 o'clock in the morning, because I went out with a couple of friends and um that's how I remember it because the kids went the next week out to my folks' and they said nothing happened after that.
Resp't's Br., App. C at 5-6. The date of the last occurrence was after July 1, 1988. This is within the statutory time frame. The police report, information, determination of probable cause, guilty plea, plea agreement, and psychological evaluation show that Crabtree committed sexual offenses after July 1, 1988.
The record also indicates the sentencing court was aware of the requirements of former RCW 9.94A.120(8)(a) because Crabtree was not sentenced to community placement for count V, which occurred in March of 1987. In light of this and the documents before the sentencing court, Crabtree was not convicted of crimes occurring before the effective date of the statute.
Crabtree also alleges constitutional errors in the application of the statute and in the charging document itself. In both cases the petitioner must show actual prejudice. See In re Personal Restraint of St. Pierre, 118 Wash.2d 321, 328, 823 P.2d 492 (1992) (where the error does not give rise to a conclusive presumption of prejudice, a petitioner must establish by a preponderance of the evidence that a constitutional error resulted in actual and substantial prejudice); In re Personal Restraint of Cook, 114 Wash.2d 802, 810-11, 792 P.2d 506 (1990); State v. Kjorsvik, 117 Wash.2d 93, 105-06, 812 P.2d 86 (1991) (employing a two-prong test: (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice). Crabtree admitted the offenses occurred after the statute came into effect. He was not prejudiced by the charging document which included the month before the statute came into effect, and he was not prejudiced by how the statute was applied because there is evidence he committed the crimes within the statutory time.
Crabtree's ineffective assistance of counsel claims fail as well. To prevail in an *820 ineffective assistance of counsel claim, a defendant must show: "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, ie., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wash.2d 322, 334-35, 899 P.2d 1251 (1995) (citing State v. Thomas, 109 Wash.2d 222, 225-26, 743 P.2d 816 (1987) (applying the two-prong test in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984))). In light of Crabtree's guilty plea, the police report, and Crabtree's admissions to the psychologist, counsel's assistance was effective. Crabtree was not prejudiced because he admitted to the crimes occurring after the statute came into effect.
Crabtree also argues that his guilty plea on count V should be withdrawn due to newly discovered evidence, i.e., an October 7, 1998 affidavit from the victim stating Crabtree never had sexual intercourse with him. This claim is without merit, as the Court of Appeals stated in the Order Dismissing Personal Restraint Petition:
To obtain a new trial based on newly discovered evidence, a defendant must prove the evidence could not have been discovered before trial by the exercise of due diligence. Crabtree offers no reason for waiting 9 years to challenge his plea and to obtain this statement from the victim. He has thus failed to establish due diligence.
Furthermore, because he pleaded guilty, his argument is without merit. He does not complain he was tricked, coerced or threatened to plead guilty. The plea form, which Crabtree signed, states he was making the plea freely and voluntarily, without threats or promises. Finally, Crabtree provides no support for his bald assertion that the only evidence of sexual intercourse was the victim's statement.
Pet'r's Supplemental Br. at A-69 (footnotes omitted) (citing State v. Macon, 128 Wash.2d 784, 803, 911 P.2d 1004 (1996); State v. Arnold, 81 Wash.App. 379, 386-87, 914 P.2d 762 (victim's recantation insufficient to grant new trial in part because he admitted guilt, rather than pleading not guilty or entering a plea under North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)), review denied, 130 Wash.2d 1003, 925 P.2d 989 (1996)). Crabtree has not proven that this evidence could not be discovered before trial with the exercise of due diligence and therefore his claim to withdraw his guilty plea should be denied.[7]

CONCLUSION
Crabtree's petition should be denied because he is unable to show good cause why this court should grant his petition. Aho is not an intervening change in the law that is material to Crabtree's case because Crabtree did not suffer the same due process violations. In this case the question of whether Crabtree may have been convicted of offenses occurring outside the statutory time does not exist. Crabtree admitted that he committed the offenses after the statute came into effect. This is shown in the police report, information, determination of probable cause, guilty plea, and psychological evaluation. In light of the admissions made by the petitioner, the assistance of counsel was effective. Finally, the withdrawal of his guilty plea is denied because it is without merit.
The consolidated petitions are denied.
SMITH, JOHNSON, MADSEN, TALMADGE, IRELAND, and BRIDGE, JJ., concur.
SANDERS, J. (dissenting).
This conviction on plea of guilty must be vacated because the charging document alleged the offense took place some time during a period both before and after the effective date of the criminal statute. State v. *821 Aho, 137 Wash.2d 736, 744, 975 P.2d 512 (1999).
Now is not the time to find the facts nor weigh the evidence, but rather to consider whether the charge to which Mark Alan Crabtree pleaded guilty was a justiciable crime when the conduct allegedly occurred. Because the fact finder may have found Crabtree guilty of the crime based on acts occurring prior to its effective date, July 1, 1988, State v. Aho represents an intervening change in the law, thus establishing good cause to grant Crabtree's personal restraint petition.
Aho considered a situation where, "in direct violation of [the] clear legislative mandate both the state and defense counsel permitted [the] matter to go forward despite the fact that the charging period, set forth in the jury instructions, included a substantial period of time before July 1988." Aho, 137 Wash.2d at 743, 975 P.2d 512 (emphasis added). Interpreting the same section of Washington law at issue here, Aho vacated convictions because of the possibility they were based on acts occurring before the statute's effective date, depriving Aho of his liberty absent that process which is due. Id.
I. Crabtree's Guilty Plea Supports, Rather Than Distinguishes, the Application of State v. Aho
The majority admits Crabtree's due process rights "would have been violated if the offenses for which the community placement was imposed had occurred before July 1, 1988," but attempts to circumvent its own rule on the basis of the charging information and guilty plea factual averments. Majority at 818. But far from establishing a factual distinction between Aho and the present case, the substance of the information and facts upon which this guilty plea was based embodies the identical factual predicate upon which Aho was decided. See Aho, 137 Wash.2d at 741, 975 P.2d 512.
Admitting the charging information's deficiency, the majority bases its claim Crabtree was not prejudiced by relying on an equivalent statement on plea of guilt wherein "he admitted he committed rape of a child and child molestation between June 1, 1988 and August 31, 1988." Majority at 818 (emphasis added). According to the majority "[t]his constituted an admission of criminal acts between July 1 and August 31." Id. Of course it didn't, it admitted acts between June 1 and August 31.
We held in Aho the defendant may have been convicted of an offense occurring before July 1, 1988 specifically because "the charging period, set forth in the jury instructions, included a substantial period of time before July 1998." Aho, 137 Wash.2d at 743, 975 P.2d 512. The majority is simply wrong when it contends the relevant documents prove "the offenses occurred within the statutory period," or show "Crabtree committed sexual offenses after July 1, 1988." Majority at 819.
To the contrary, all of the documents upon which the conviction was based, e.g., the charging information, factual statement by the defendant, guilty plea, and judgment and sentence, suffer from exactly the same infirmity as the jury instruction at issue in Aho by including a substantial period of time before the effective date of the statute. See Aho, 137 Wash.2d at 743, 975 P.2d 512. None of these documents offers any clue as to whether the crimes were committed a month before the effective date of the statute or a month after.
The majority's opinion is particularly disturbing in light of the policy behind CrR 4.2(d) which "protects defendants who are in the position of voluntarily pleading guilty with an understanding of the nature of the charge, but who do not realize that the conduct does not actually fall within the charge." Majority at 818-19.
II. The Factual Allegations Relied Upon by the Majority Are Insufficient to Meet the Aho Standard
Crabtree pleaded guilty to the averments in the information, by repeating these same averments in his statement on plea of guilty.[1] *822 "Challenges to the sufficiency of the information are of constitutional magnitude if they concern the essential elements of the crime charged," and an information is "constitutionally deficient if the defendant shows he was prejudiced by imprecise charging language." State v. Moavenzadeh, 135 Wash.2d 359, 363 n. 2, 956 P.2d 1097 (1998) (citing State v. Campbell, 125 Wash.2d 797, 802, 888 P.2d 1185 (1995)).
The majority claims Crabtree "admitted the offenses occurred after the statute came into effect," implying the trial court was aware of the alleged admission in light of the effective date of the statute, and discounting the effect of the information and formal statement of facts supporting that plea. Majority at 819. Notwithstanding, the trial court included the month of June in its findings of fact as well as the judgment and sentence for counts II and IV, all of which include the extra-statutory month. That should end the irrelevant inquiry about what the trial court was subjectively thinking.
The majority cites State v. Zumwalt, 79 Wash.App. 124, 901 P.2d 319 (1995) to explain the protections offered by CrR 4.2(d). Majority at 819. However, Zumwalt also imposes the additional requirement that "the factual basis [for the trial court's determination] must be developed on the record at the plea hearing." Zumwalt, 79 Wash.App. at 130, 901 P.2d 319 (citing State v. Osborne, 102 Wash.2d 87, 95, 684 P.2d 683 (1984)) (emphasis added). Whether the trial court considered and rejected the factual assertions or never considered them at all, by including the extra month the court expressly allowed for the prospect that the conduct could have occurred during the extended period. There can be no certainty "the judge, before accepting the guilty plea ... determine[d] that the defendant's admitted conduct constitute[d] the charged offenses." Majority at 819. We are in no position to rewrite the same decision we are charged to review.
III. Ineffective Assistance of Counsel
Crabtree's petition demonstrates ineffective assistance of counsel:
[T]here is no conceivable legitimate tactic where the only possible effect of deficient performance was to allow the possibility of a conviction of a crime under a statute which did not exist and could not be applied during part of the charging period. Prejudice here is obvious.
Aho, 137 Wash.2d at 745-46, 975 P.2d 512 (emphasis added). There can be no dispute the statute cannot be lawfully applied to the entire period charged. Thus, even the possibility of a wrongful conviction illustrates the same "obvious" prejudice we recognized in Aho.
I dissent.
ALEXANDER, J., concurs.
NOTES
[1] 137 Wash.2d 736, 975 P.2d 512 (1999).
[2] Former RCW 9.94A.120(8)(a) states:

When a court sentences a person to a term of total confinement to the custody of the department of corrections for an offense categorized as a sex offense ... committed on or after July 1, 1988, the court shall in addition to the other terms of the sentence, sentence the offender to a one-year term of community placement ....
[3] RCW 10.73.090(1) states that "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction."
[4] RCW 10.73.140 states:

If a person has previously filed a petition for personal restraint, the court of appeals will not consider the petition unless the person certifies that he or she has not filed a previous petition on similar grounds, and shows good cause why the petitioner did not raise the new grounds in the previous petition. Upon receipt of a personal restraint petition, the court of appeals shall review the petition and determine whether the person has previously filed a petition or petitions and if so, compare them. If upon review, the court of appeals finds that the petitioner has previously raised the same grounds for review, or that the petitioner has failed to show good cause why the ground was not raised earlier, the court of appeals shall dismiss the petition on its own motion without requiring the state to respond to the petition. Upon receipt of a first or subsequent petition, the court of appeals shall, whenever possible, review the petition and determine if the petition is based on frivolous grounds. If frivolous, the court of appeals shall dismiss the petition on its own motion without first requiring the state to respond to the petition.
[5] This court stated "the United States Supreme Court explained that the ex post facto prohibition applies to the legislative branch, and thus judicial decisions which are applied retroactively may raise due process concerns, but do not fall within the ex post facto clause itself." Aho, 137 Wash.2d at 742, 975 P.2d 512; Marks v. United States, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) ("[t]he Ex Post Facto Clause is a limitation upon the powers of the Legislature and does not of its own force apply to the Judicial Branch of government" (citation omitted)). The laws at issue in both Aho and this case were not enacted to apply retroactively, so in both cases the issue involves a violation of due process. See Laws of 1988, ch. 145, § 25; Laws of 1988, ch. 153, § 2.
[6] The effective date of the statute under which community placement was imposed was July 1, 1988.
[7] The victim's statement, dated October 7, 1998, was: "I Jeremy Michael Seitzinger make this statement under my own free will. My uncle Mark A. Crabtree has not had sexual intercourse or sexual relations with me at any time in the past." Pet'r's Supplemental Br. at A-95.
[1] Finding a guilty plea "lacked a sufficient factual basis in the record of the plea hearing," the Court of Appeals noted "[c]ourts and counsel should not accept plea statements that do no more than simply parrot the information. The essential facts underlying the critical elements of the offense must be included. A plea statement providing only the elements of the charge contains conclusions of law, not the underlying facts, and is therefore inadequate." State v. Zumwalt, 79 Wash.App. 124, 132, 901 P.2d 319 (1995). In this case neither the plea agreement nor the information contained underlying facts sufficient to prove the required elements of the charge.