**FILED**
**SEPTEMBER 24, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36734-7-III |
| Respondent, | ) | (Consolidated with |
| | ) | No. 37316-9-III) |
| v. | ) | |
| | ) | |
| DESTINY LOUISE AHENAKEW, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |
| | ) | |
| In the Matter of the Personal Restraint of | ) | |
| | ) | |
| DESTINY LOUISE AHENAKEW, | ) | |
| | ) | |
| Petitioner. | ) | |

SIDDOWAY, J. — Destiny Ahenakew appeals her conviction for first degree burglary entered following her guilty plea, submits a pro se statement of additional grounds (SAG), and, in a motion to withdraw the guilty plea that was transferred to us for consideration as a personal restraint petition (PRP), contends that her plea was not knowing and voluntary. We affirm the conviction, decline to consider the SAG, and dismiss the petition.

FACTS AND PROCEDURAL BACKGROUND

In December 2018, the State charged Destiny Ahenakew with first degree burglary and first degree robbery. Three months later, she appeared for a hearing scheduled for entry of a guilty plea, to be followed immediately by sentencing. At the outset of the hearing, the prosecutor explained that the parties had reached an agreement under which Ms. Ahenakew would plead guilty to first degree burglary in exchange for the State's agreement to dismiss the robbery charge. The State had agreed to recommend the low end of the standard range, which, with Ms. Ahenakew's offender score of 6, was 57 months. Among her prior convictions was a conviction several years earlier for assault of a child in the second degree, which constitutes a "[m]ost serious offense" under RCW 9.94A.030(33)(c).

On her signed statement on plea of guilty presented to the court, Ms. Ahenakew had initialed a "Notification Relating to Specific Crimes" provision that explained that the crime to which she was pleading guilty was "a most serious offense or 'strike' as defined by RCW 9.94A.030." Clerk's Papers (CP) at 14 (boldface omitted). Of 25 such notifications included in the printed judgment and sentence form, this was the only one that applied and that she was required to read and initial.

Her signature on the plea agreement appeared immediately below the following acknowledgement:

> My lawyer has explained to me, and we have fully discussed, all of the above paragraphs and the "Offender Registration" Attachment, if applicable. I understand them all. I have been given a copy of this "Statement of Defendant on Plea of Guilty." I have no further questions to ask the judge.

CP at 19.

The following exchanges took place between the trial court and Ms. Ahenakew during the hearing at which her plea was accepted:

> THE COURT: Okay. You're 29 year [sic] old, went through the 10th grade in school?
> MS. AHENAKEW: Yes.
> THE COURT: Do you have any problems reading or understanding English?
> MS. AHENAKEW: No.
> THE COURT: Okay. I have before me a Statement of Defendant on Plea of Guilty to this felony of 1st Degree Burglary. Have you had enough time to go over this with your attorney?
> MS. AHENAKEW: Yes, I have.
> THE COURT: Okay. You read through it with him?
> MS. AHENAKEW: Yes.
> THE COURT: Do you have any questions for him or myself about the charge you're pleading guilty to today?
> MS. AHENAKEW: I do not, ma'am.
> . . . .
> THE COURT: . . . Other than [the State's sentencing] recommendation, Ms. Ahenakew, has anyone made any promises or threats to convince you to take this plea today?
> MS. AHENAKEW: No.
> THE COURT: Okay. By pleading guilty to this charge today, Ms. Ahenakew, there will be consequences beyond prison and fines. If you are not a U.S. citizen, there maybe [sic] immigration consequences. This offense is a most serious offense or a strike offense.
> And is this a first strike in her case?
> MS. AHENAKEW: No.
> [PROSECUTOR]: It's a second strike, Your Honor.

3

THE COURT: A second strike. Okay. And, [addressing defense counsel], you've gone over the ramifications with that with her?

[DEFENSE COUNSEL]: I have, Your Honor.

THE COURT: Ms. Ahenakew, do you understand what that means for your future?

MS. AHENAKEW: Yes.

Report of Proceedings (RP) at 4-9.

Ms. Ahenakew indicated in her statement on plea of guilty that the trial court could review the police reports and/or a statement of probable cause supplied by the prosecution to establish a factual basis for her plea. The investigating officer's statement of facts was presented to the trial court and the record reflects that the court took time to review it.

Among the information provided by the officer's statement of facts was that on the night of the burglary, Rebecca Sewell, who lived in an apartment complex, heard a noise in the hallway outside her apartment and stepped into the hallway to investigate. She saw a woman, later identified as Ms. Ahenakew, going through property in Ms. Sewell's storage closet. Ms. Sewell told police that the closet was hers and no one else was permitted access to it.

According to the statement of facts, Ms. Sewell "heard [Ms. Ahenakew] state that the closet belonged to [Ms. Ahenakew]." CP at 3. Ms. Sewell confronted Ms. Ahenakew, who attempted to leave with a suitcase and black bag belonging to Ms. Sewell. When Ms. Sewell stopped her, Ms. Ahenakew assaulted Ms. Sewell, grabbing

4

her hair, punching her in the face, and kicking her several times. Ms. Ahenakew then fled down the north stairwell of the building with Ms. Sewell's black bag. Bill Allen, another resident of the apartment complex, heard sounds like fighting and screaming coming from the third floor and observed a woman coming down the stairs. He demanded that she leave and saw her run from the building. Ms. Sewell heard the burglar say, and Mr. Allen heard the fleeing woman say, that she had dropped her cellphone.

An officer dispatched to a report of the burglary in progress took statements from Ms. Sewell and Mr. Allen and disseminated a description of the suspect. Ms. Ahenakew was spotted and detained, and was presented to Ms. Sewell in a showup identification at which Ms. Sewell said she was "200% sure" Ms. Ahenakew was the burglar. CP at 5. Ms. Sewell identified the black bag recovered from Ms. Ahenakew as hers. An abandoned cellphone found at the apartment complex was booked into police property.

One of the responding officers asked Ms. Ahenakew if she had been in a fight or argument with someone in the past 2-3 hours. According to the officer, he was told by Ms. Ahenakew that she had to defend herself from someone, at a location she identified by pointing in the direction of the complex where the burglary took place. The officer reported he was told by Ms. Ahenakew, "'She was trying to say I was going through her stuff,'" and, "'I didn't know it was her stuff.'" CP at 6. The officer "asked [Ms. Ahenakew] if she thought the stuff was hers, which she responded, 'No.'" CP at 6.

5

After reviewing the statement of facts, the trial court accepted Ms. Ahenakew's plea, finding it was voluntary, knowing, and intelligent.

At the sentencing that followed, defense counsel asked the trial court to follow the State's recommendation, stating, "It's a strike. And [Ms. Ahenakew] knows that she better not get another one." RP at 12. The trial court followed the recommendation, sentencing Ms. Ahenakew to 57 months.

Ms. Ahenakew filed a timely notice of appeal. A couple of months later, and before an opening brief was filed in the appeal, Ms. Ahenakew filed a pro se motion to withdraw her guilty plea, contending it was not voluntary, knowing, and intelligent. In her declaration in support of the motion, she provided the following explanation of her misunderstanding:

> I went to court and plead [sic] guilty because I had no other option. I did not know that this offense was a strike. I really pray that this gets looken [sic] into. I did not know what happened when all was said and done. I feel that my case was handled unjustly. This will be my second strike and extremely detrimental to my record.

CP at 59.

Later, after Ms. Ahenakew's court-appointed lawyer filed her opening brief in the appeal, the trial court transferred Ms. Ahenakew's motion to withdraw her guilty plea to this court for consideration as a personal restraint petition. The matters were consolidated.

6

ANALYSIS

APPEAL

In her appeal, Ms. Ahenakew contends the trial court violated her due process rights by accepting her guilty plea, arguing that facts in the record called into question whether there was a factual basis for the plea.

Due process requires a guilty plea be made voluntarily and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 242-43, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018). Beyond the constitutional minimum, CrR 4.2(d) requires that "[t]he court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." This requirement protects defendants who are in the position of voluntarily pleading guilty with an understanding of the nature of the charge, but who do not realize that their conduct does not actually fall within the charge. *In re Pers. Restraint of Crabtree*, 141 Wn.2d 577, 585, 9 P.3d 814 (2000). "Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances." *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996).

Among facts in the police report that Ms. Ahenakew agreed could be considered by the trial court as a basis for her plea were that Ms. Sewell claimed the storage closet was Ms. Sewell's alone, that the property Ms. Ahenakew removed from the closet was Ms. Sewell's, and that the black bag recovered from Ms. Ahenakew was Ms. Sewell's.

7

Another fact included in the report was that when asked by a police officer whether "she thought the stuff was hers, . . . [Ms. Ahenakew] responded, 'No.'" CP at 6. Those facts alone provide a sufficient factual basis for the plea. Pointing to Ms. Sewell's report that she heard Ms. Ahenakew say the closet was hers, however, Ms. Ahenakew argues this should have caused the court to explore whether Ms. Ahenakew understood that if the storage closet belonged to Ms. Ahenakew, her actions would not have been first degree burglary.

A factual basis for a plea exists if there is sufficient evidence for a jury to conclude that the defendant is guilty. *State v. Saas*, 118 Wn.2d 37, 43, 820 P.2d 505 (1991) (citing *State v. Newton*, 87 Wn.2d 363, 370, 552 P.2d 682 (1976)). Federal cases, which are helpful in applying the factual basis requirement, make the related observation that evidence of guilt need not be uncontroverted to support a guilty plea. *United States v. Owen*, 858 F.2d 1514 (11th Cir. 1988), *and see Newton*, 87 Wn.2d at 369 (federal cases are helpful in light of the intent of the drafters of CrR 4.2(d) to copy Fed. R. Crim. P. 11, whose "factual basis" requirement is substantially similar to the Washington requirement).

Ms. Ahenakew argues there is an ambiguity in the police report akin to an ambiguity that caused this court to reverse a conviction in *State v. S.M.*, 100 Wn. App. 401, 996 P.2d 1111 (2000), but there is an important distinction. S.M., a 12 year old, was charged with three counts of first degree rape of a child. The factual basis for his plea

8

was his plea statement that he "had sexual contact with my Brother who is age 10" and

"[i]t happened three times." *Id*. at 415. Unless the "sexual contact" involved penetration,

it would not constitute the first degree rape charges to which S.M. was pleading guilty.

The trial court did nothing to clarify the "sexual contact" S.M. was admitting. This court

reversed and remanded because the plea statement did "not provide the necessary factual

basis for the charge of rape of a child." *Id.*

The opinion in *S.M.* says there was a police report. It also says that S.M.'s brother

had accused him of three acts of anal intercourse. *See id.* at 403, 407. If S.M.'s plea

agreement had admitted to facts contained in the police report, and if the police report

included the 10 year old's allegations, the factual basis would have been sufficient.

To summarize, if a defendant chooses to state in her own words what makes her

guilty of a crime, the trial court needs to resolve any ambiguities in that statement. If a

defendant agrees that the court may review police reports or an affidavit of probable

cause, however, then information in the reports or affidavit that establishes the elements

of the crime provides a factual basis for the plea. Information in the police reports or

affidavit that the defendant lied about her actions or motivations in the course of

committing the crime or originally professed her innocence does not create an ambiguity

that the trial court is required to clarify.[1]

---

[1] We disagree that there was an inconsistency or ambiguity here in the police
report of the burglary. The most likely explanation for Ms. Ahenakew saying that the

STATEMENT OF ADDITIONAL GROUNDS

In a pro se SAG, Ms. Ahenakew arguably raises two.[2]  One is the issue raised in

her PRP.  It requires evidence outside the record and is properly considered in our review

of the petition.

The other issue arguably raised is a charge that before the day of the plea hearing,

Ms. Ahenakew's trial lawyer never discussed the proposed plea with her and she felt

coerced to enter the plea.

Defense counsel has an ethical duty to discuss plea negotiations with a client.

*State v. James*, 48 Wn. App. 353, 362, 739 P.2d 1161 (1987).  This includes not only

communicating offers, but discussing tentative plea negotiations and the strengths and

weaknesses of a defendant's case so the defendant knows what to expect and can make

an informed judgment whether or not to plead guilty.  *Id.*

There is nothing in the record to suggest that there were tentative plea negotiations

at an earlier time that Ms. Ahenakew's trial lawyer failed to communicate.  Nor is there

anything in the record supporting a claim of coercion, other than Ms. Ahenakew's bald,

unexplained statement in the declaration appended to her PRP that "I went to court and

---

closet was hers was that she saw Ms. Sewell come into the hallway and was trying to
deflect a resident's concern about her presence.  There is no reason to believe she knew
the closet was Ms. Sewell's.

[2] Ms. Ahenakew did not file a SAG as such.  She filed two letters with the trial
court in December 2019 that were forwarded to this court.  We notified Ms. Ahenakew
and her appellate counsel that we would consider the letters as a SAG.

plead [sic] guilty because I had no other option." PRP at 12. Ms. Ahenakew's signed

plea agreement, indicating she had read it, stated, "I make this plea freely and

voluntarily," and "No one has threatened harm of any kind to me or to any other person

to cause me to make this plea." CP at 18. When asked by the trial court if anyone made

any promises or threats to convince her to take the plea, Ms. Ahenakew answered, "No."

RP at 8.

If there are facts that support either coercion or a breach of trial counsel's duty to

communicate plea negotiations, Ms. Ahenakew's remedy is to seek relief through a

personal restraint petition. *See State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159

(1991).

PERSONAL RESTRAINT PETITION

In support of Ms. Ahenakew's motion to withdraw her guilty plea, she testifies in

an appended declaration that she did not understand that first degree burglary was a strike

offense. She testifies that if she had known that pleading guilty would result in her

receiving a second strike, she would not have entered the plea.

To obtain relief in a PRP, a petitioner must show actual and substantial prejudice

resulting from alleged constitutional errors, or for alleged nonconstitutional errors a

fundamental defect that inherently results in a complete miscarriage of justice. *In re*

*Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990). To avoid dismissal,

the petition must be supported by facts and not merely bald or conclusory allegations.

11

Nos. 36734-7-III and 37316-9-III (consolidated)
*State v. Ahenakew; Pers. Restraint of Ahenakew*

*Id.* at 813-14; *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). A "petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." *Id.*

Ms. Ahenakew's motion was pro se, and was filed in June 2019, a couple of months before her plea and sentencing hearing was transcribed. She might not have reviewed her statement on plea of guilty. While she alleges in her declaration in support of the petition that "I did not know that this offense was a strike," PRP at 12, the transcript and her plea agreement demonstrate that she was clearly informed of this fact, both in writing and verbally, and acknowledged her awareness. Lacking the required factual support, her petition must be dismissed.

We affirm Ms. Ahenakew's conviction, decline to consider her statement of additional grounds, and dismiss the petition.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Korsmo, A.C.J.                    Fearing, J.

12